**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO 0:19-CV-60903-BB

YANELLE PRIETO,                                    **CLASS ACTION**
individually and on behalf of all others
similarly situated,

*Plaintiff*,                                              **JURY TRIAL DEMANDED**

v.

CRETE CARRIER CORPORATION,

*Defendant*,

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiff Yanelle Prieto ("Plaintiff" or "Class Representative"), on behalf of herself and a

class of similarly situated persons, without opposition from Defendant Crete Carrier Corporation,

("Defendant" or "Crete"), respectfully requests the entry of an order granting preliminary approval

of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement

Agreement" or "Agreement"), certifying a class for settlement purposes, and providing for

issuance of Notice to the Settlement Class.[1]

**I.     INTRODUCTION**

      The Settlement Agreement makes $600,000.00 available to the settlement class, which will

also be used to cover the Claim Settlement Payments, all Attorneys' Fees and Expenses, all Notice

and Administration Costs, and any Service Award in settlement in full of this Action. If approved,

the Settlement will bring an end to what has otherwise been, and likely would continue to be,

_____

[1] The Agreement is attached as *Exhibit A*. All capitalized terms used herein have the same
definitions as those defined in the Agreement.

contentious litigation centered on unsettled legal questions.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;
2. Preliminary certification (for settlement purposes only) of a Settlement Class and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;
3. Approval of the Settlement Administrator;
4. Approval of the Notice program describing:
   a. The Settlement and the Settlement Class members' rights with respect to the Settlement;
   b. The proposed Release of claims
   c. Class Counsel's request for attorneys' fees and expenses, and an Service Award for the Class Representative; and
   d. The procedure for opting-out of or objecting to the Settlement;
5. Approval of the Claims process; and
6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Scott Edelsberg ¶ 2, attached hereto as *Exhibit B*. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendant's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in extensive pre-litigation discovery, formal discovery, a full-day mediation, and extensive arm's-length negotiations. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. *Id.* at ¶ 3.

For all these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.     **BACKGROUND**

### a. **Facts**

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing

regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] To promote and market its services, Defendant initiated a text message campaign whereby text messages were sent to customers. Plaintiff alleges that she and approximately 897 other individuals continued to receive these messages even after they requested to opt out in violation of the TCPA.

### b. **Procedural History**

On April 5, 2019, Plaintiff filed a Class Action Complaint (the "Original Complaint") on behalf of herself and a putative class in the lawsuit styled *Prieto v. Crete Carrier Corporation*, Case No. 19-CV-60903-BB (S.D. Fla. 2019) (the "Action"), which asserted claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") against Defendant Crete Carrier Corporation ("Crete") including that she and members of the class received text messages from or on behalf of Crete after requesting to stop receiving text messages, which allegedly harmed her and the class (the "Allegations") and sought declaratory and injunctive relief, statutory damages, attorneys' fees, and costs. [DE #1].

The Parties engaged in intensive arm's-length negotiations over multiple days to resolve the Case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. On September 23, 2019, with the assistance of mediator David H. Lichter of the Lichter Law Firm, the Parties and their counsel met in Aventura, Florida and engaged in intensive arm's-length negotiations and an all-day mediation to resolve the Action. Following mediation, the Parties' counsel continued to engage in lengthy telephone negotiations in a further attempt to reach a resolution and, the Parties reached settlement.

---

[2] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

III.   **SUMMARY OF THE SETTLEMENT TERMS**

The following is a summary of the material terms of the Settlement.

**a.   The Settlement Class**

The proposed Settlement establishes a Settlement Class of all members of the classes of

persons in this Action as follows:

> **all individuals residing in the United States (i) who were sent a text message (ii) on his or her cellular telephone (iii) using the Twilio/Portal platform (iv) by or on behalf of Crete Carrier Corp. ("Crete") (v) after he or she requested that Crete stop transmitting text messages and (vi) that were sent in the four years prior to the date of this Agreement.**

Agreement Section I(GG). Excluded from the Settlement Class are: (1) the trial judge presiding

over this case; (2) Defendant, as well as any parent, subsidiary, affiliate, or control person of

Defendant, and the officers, directors, agents, servants, or employees of Defendant; (3) any of the

Released Parties; (4) the immediate family of any such person(s); any Settlement Class Member

who has timely opted out of this proceeding; and (6) Plaintiff's Counsel, their employees, and their

immediate family.

**b.   Settlement Consideration**

Pursuant to the Settlement, Defendant has agreed to make up to a maximum of

$600,000.00 available for the benefit of Settlement Class Members ("Settlement Fund").

**c.   Settlement Administrator**

Pending this Court's approval, Epiq Systems, Inc. ("Epiq") will serve as the Settlement

Administrator. The Administrator shall administer the Settlement in a cost-effective and timely

manner. Without limiting any of its other obligations as stated herein, the Administrator shall be

responsible for, among other things and if and as necessary, for the implementation and effectuation

of Class Notice, processing Claim Forms, receiving and maintaining on behalf of the Court any

correspondence regarding requests for exclusion and/or objections to the Settlement, administering Claim Settlement Payments, and providing all other related support, reporting, and administration as further stated in this Agreement. The Parties may direct the Administrator to assist with various additional administrative tasks in implementing the Settlement as the Parties agree is appropriate.

The Parties will coordinate with the Administrator to provide and Mail Notice to the Settlement Class, as provided in this Agreement. The Administrator shall administer the Settlement in accordance with the terms of this Agreement and shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as Confidential Information except as provided for in this Agreement or by court order.

All Notice and Administrative Costs shall be paid by Defendant from the Settlement Fund. Defendant shall not be obligated to compute, estimate, or pay any taxes on behalf of Plaintiff, any Settlement Class Member, Class Counsel, or the Administrator. The Administrator will invoice Defendant directly for start-up and initial Class Notice costs at any time after entry of the Preliminary Approval Order and will bill Defendant monthly for incurred fees and expenses thereafter. The Administrator will complete and provide to Defendant any W-9 forms necessary for Defendant to pay for the Notice and Administrative Costs. The Administrator shall provide up-to-date cost estimates, and future cost estimates, upon request by Defendant.  The Administrator shall provide other information as reasonably requested by Defendant from time to time. Agreement at I.A.

  d.  **The Notice Program**

The Settlement Administrator will be responsible for administrating the Notice Program. The Notice Program consists of two different components: (1) Mailed Notice and (2) Long-Form Notice. Agreement at III.C. The forms of the proposed Mailed Notice and Long-Form Notice agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification,

are attached to the Settlement Agreement as Exhibits.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for an Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents.

### i. Mail Notice

A copy of the Mail Notice is attached to the Settlement Agreement as Exhibit 4. Individuals who receive Mail Notice will have the option of mailing in the Claim Form or visiting the Settlement Website (www.CreteTCPAsettlement.com) to download and file a Claim Form.

No earlier than seventy-five (75) days before the Final Approval Hearing is scheduled to take place, or at such other time as may be ordered by the Court consistent with this Agreement, the Administrator shall commence sending notice. The Administrator shall send the Mail Notice by first class U.S. Mail and shall be done with a double-sided postcard that includes the Claim Form with prepaid postage. For any Mail Notices returned as undeliverable or for any phone numbers for which Defendant lacks a mailing address, the Administrator shall perform reverse look-ups. Before any notice is commenced, Class Counsel and Defendant's counsel shall first be provided with a proof copy of such notice (including what the items will look like in their final form), and shall have the right to inspect the same for compliance with this Agreement and with the Court's orders. Agreement at III.C.3.

### ii. Long-Form Notice

Mailed   Notice   will   all   contain   the   address   for   the   Settlement   Website,

www.CreteTCPAsettlement.com. On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the Mailed Notice. The Long Form Notice will be sent to all Settlement Class members who contact the Administrator by telephone or email and request a copy. Agreement at III.C.4.

### iii.   Settlement Website

By the beginning of the Claim Period, the Administrator shall establish and maintain the Settlement Website, which, among other things: (i) enables Settlement Class Members to access and download the Claim Form, (ii) provides contact information for Class Counsel, and (iii) provides access to relevant documents concerning the Action. Such documents shall include this Agreement and Class Notice; the Long-Form Notice, the Preliminary Approval Order; the Complaint; and, when filed, the Final Approval Order. The Class Notice shall include the address (URL) of the Settlement Website. The Administrator shall maintain the Settlement Website until at least sixty (60) days following the Claim Deadline. Agreement at III.C.5.

### e.   **Claims Process**

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim their portion of the Settlement Fund. Edelsberg Decl. ¶ 4. Settlement Class members will make a claim by submitting a valid Claim Form via mail or online to the Settlement Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 1. The Claim Form shall require any Settlement Class Member who submits a Claim to provide the following documentation and information, and affirm that the documents and information provided are true and accurate under penalty of perjury: (a) Settlement Class Claimant's name, current address, telephone number, and e-mail address; (b) Settlement Class Claimant's telephone number that received a text message from Defendant; (c) an affirmation that

the Settlement Class Claimant received a text message from Defendant within the Class Period after requesting to stop receiving text messages; (d) an affirmation that the Settlement Class Claimant did not give prior express consent to receive a text message from Defendant within the Class Period; and (e) a declaration under penalty of perjury that all information and representations contained in the Claim Form are true and correct. Any Settlement Class Member who does not submit an accurate and fully completed Claim Form by the Claim Deadline shall be deemed to have waived any Claim and any such Claim will be rejected.

### f.  Allocation of the Settlement Fund Payments

Each Settlement Class Member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check in an amount which shall be the lesser of (i) $245.00 or (ii) a pro rata share of the Settlement Fund minus Attorneys' Fees and Expenses. Within sixty (60) days of the Final Approval Order becoming Final, the Administrator will send, by first-class mail, a Claim Settlement Check to each Settlement Class Member with an Approved Claim. Checks will be valid for one hundred and eighty (180) days from the date on the check. Any money that has not been distributed because of uncashed checks shall be used to defray Notice and Administrative Costs. Agreement at II.B.1.

### g.  Opt-Out and Objection Procedures

A Settlement Class Member who wishes to opt-out of the Settlement Class must do so in writing. To opt-out, a Settlement Class Member must complete and send to Class Counsel (or the Administrator), at the address listed in the Class Notice, a Request for Exclusion that is postmarked no later than the Opt-Out Deadline, as specified in the Class Notice (or as the Court otherwise requires). The Request for Exclusion must: (a) identify the case name; (b) identify the name, address, and telephone number of the Settlement Class Member; (c) identify the telephone number at which the person received a text message from Defendant; (d) be personally signed by the Settlement Class

Member requesting exclusion; and (e) contain a statement that indicates a desire to be excluded from the Settlement Class in the Action, such as: "I hereby request that I be excluded from the proposed Settlement Class in *Prieto v. Crete Carrier Corporation*, Case No. 19-CV-60903-BB." Any Settlement Class Member who does not opt-out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class, and shall be bound by all subsequent proceedings, orders, and judgments, including the Final Approval Order. A Settlement Class Member who desires to opt-out must take timely affirmative written action in accordance with this Section, even if the Settlement Class Member desiring to opt-out (a) files or has filed a separate action against any of the Released Parties, or (b) is, or becomes, a putative class member in any other class action filed against any of the Released Parties. Agreement at III.E.1.

Settlement Class Members who wish to file an objection to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order. Pending Court approval, for an objection to be considered by the Court, it must include the following:

a. the name of the Action;
b. the objector's full name, address and telephone number;
c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;
d. all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;
e. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;
f. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;
g. a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years the objector's counsel;

    h.  any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

    i.  the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

    j.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

    k.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

    l.  the objector's signature (an attorney's signature is not sufficient). Agreement at III.F.2.

### h.  Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, agree to the release as defined in Section V of the Agreement.

### i.  Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendant has agreed not to oppose Class Counsel's request for attorneys' fees and expenses not to exceed 25% of the Settlement Fund to be paid by Defendant from the Settlement Fund. Class Counsel shall be responsible for allocating and shall allocate among Class Counsel any Attorneys' Fees and Expenses, and Defendant shall have no responsibility, role, or liability in connection with such allocation.

Defendant has also agreed not to oppose an application for a Service Award for the Plaintiff up to $5,000.00. Agreement at II.C.  The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement. If the Court awards the Service Award, then Plaintiff will provide to Defendant a completed W-9 form within fifteen (15) days after the Effective Date, and Defendant will deliver to Class Counsel a check made payable to Plaintiff within thirty (30) days after receipt of the W-9.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a.  The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may

be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted). In the second step, after notice to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D.

Fla. 2011).

The Court should take the first step in the process and grant Preliminary Approval of the Settlement.  The Settlement is clearly within the range of reasonableness and satisfies all standards for Preliminary Approval.

**b.  <u>The Settlement Satisfies the Criteria for Preliminary Approval</u>**

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Edelsberg Decl. ¶ 5.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Defendant argues that Plaintiff's claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously. *Id.* at ¶ 6.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review. *Id.* at ¶ 7.

**c.  <u>The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations</u>**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."

*Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[3] *see also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Edelsberg Decl. ¶ 8. Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Edelsberg Decl. ¶ 9 and Exhibit 1. Class Counsel zealously represented their client throughout the litigation, and throughout the discovery process, which included review of numerous pages of documents and electronic data, and discovery. Edelsberg Decl. ¶ 10.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Edelsberg Decl. ¶ 9 and Exhibit 1.  As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in extensive formal discovery with Defendant. *Id*. ¶ 11. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### d.  The Facts Support a Preliminary Determination that the Settlement is Fair,

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

## Adequate and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

### i.   Likelihood of Success at Trial

Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendant, and the risks inherent in trial and post-judgment appeal. Edelsberg Decl. ¶ 12. The success of Plaintiff's claims turns on questions that would arise at summary judgment, trial and during an inevitable post-judgment appeal. Further, it remains unclear whether Plaintiff would be able to certify a class for resolution of the asserted claims at trial. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Edelsberg Decl. ¶ 13. Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members, without further delay.

### ii.   Range of Possible Recovery and the Point On or Below the Range of Recovery at Which a Settlement is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses

to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $600,000.00 made available to the class here is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, a motion for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment.

There can be no doubt that this Settlement is a fair and reasonable recovery in light of Crete's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. Edelsberg Decl. ¶ 14.

### iii.   **Complexity, Expense and Duration of Litigation**

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Edelsberg Decl. ¶ 15.

### iv.   **Stage of Proceedings**

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiff had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached only after discovery, including the production and review of numerous pages of documents and electronic data produced by Defendant. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. Edelsberg Decl. ¶ 16.

### e.  <u>Certification of the Settlement Class is Appropriate</u>

For settlement purposes only, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph GG of the Agreement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 897 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered

the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's text messaging campaign – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiff is typical of absent Settlement Class members because she received text messages and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have

extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class for settlement purposes.

f.   **The Court Should Approve the Proposed Notice Program**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit. § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for an Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

**V.**     **Proposed Schedule of Events**

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel propose the following schedule:

| Event | Date |
|---|---|
| Deadline for Completion of Mailed Notice Program | 60 days after Preliminary Approval |
| Deadline for filing papers in support of Final Approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses | 45 days prior to the Final Approval Hearing |
| Deadline for opting-out of Settlement and submission of objections | 30 days prior to the Final Approval Hearing |
| Responses to Objections | 15 days prior to the Final Approval Hearing |
| The Final Approval Hearing | Approximately 90 days after Preliminary Approval |

| The last day that Settlement Class members may submit a Claim Form to the Settlement Administrator. | 15 days after the Final Approval Hearing |
|---|---|

## VI.   <u>Conclusion</u>

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form, attached to the Settlement Agreement; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff as Class Representative; (6) appoint as Class Counsel the law firms and attorneys listed in section I(K) of the Agreement; and (7) schedule a Final Approval Hearing approximately 90 days after Preliminary Approval. A Proposed Preliminary Approval Order is attached hereto as *Exhibit C*.

Dated: November 6, 2019

Respectfully submitted,

By: */s/ Andrew J. Shamis*
SHAMIS & GENTILE, P.A.
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: 305-479-2299

EDELSBERG LAW, PA
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave, Suite 417

Aventura, FL 33180
Telephone: 305-975-3320

*Counsel for Plaintiff*